RECEIVED
IN ALEXANDRIA, LA
AUG 2 5 2005
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATS DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| RODERICK PRESIDENT | CASE NUMBER 01-2613, SECTION "P" |
|---|---|
| VERSUS | JUDGE F.A. LITTLE, JR. |
| BYRON KAYLO, ET AL | MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed pursuant to 28 U.S.C. § 1983, in forma pauperis, by pro se plaintiff Roderick President ("President"). The named defendants are Byron Kaylo ("Kaylo"), Clyde Benson ("Benson"), Captain Villemarette ("Villemarette"), Alfred Desselle ("Desselle"), Billy Tigner ("Tigner"), Marcus Beckham ("Beckham"), and Steve Gaynard ("Gaynard"), employees of the Avoyelles Correctional Center ("ACC"). In this lawsuit, President claims that he is entitled to damages due to "an ongoing pattern of retaliation, harassment and denial of due process" by the defendants. (Doc. #54, p.1.)

On September 8, 2004, after initial review of all claims presented, the undersigned recommended that President's case be dismissed with prejudice. (Doc. #20.) President filed an objection to the report and recommendation(Doc. #24), and the district judge declined to adopt the recommendation (Doc. #25). President then filed a Motion for Summary Judgment, which is now before the Court for report and recommendation (Doc. #54.) Defendants have not filed a motion for summary judgment. Likewise,

Defendants did not file an opposition memorandum, although a statement of disputed facts was submitted. (Doc. #59.)

I. Factual Background

President, a frequent pro se civil rights litigant in this Court[1], alleged that on December 13, 2000, he filed an inmate grievance over exposure to second hand tobacco smoke. (Doc. #54, Exhibit A.) He alleged that he was denied relief at each step of the three step Administrative Remedy Procedure ("ARP") in effect at ACC, and then filed suit in this Court in the matter of *President v. Stalder*, 01-0655.[2]

President claims that he was charged with a series of retaliatory disciplinary violations beginning on or about February 24, 2001, and continuing through October 29, 2002. (Doc. #54.) Specifically, President alleges:

February 24, 2001 - Desselle issued President a disciplinary report for the theft of two income tax booklets. (Exhibit A, p.5.)

February 28, 2001 - Disciplinary hearing held regarding the theft allegations and a sentence of six days extra

---

[1]See *President v. Prentice*, 01-0863; *President v. Stalder*, 01-0655; *President v. O'Neal*, 99-2317; *President v. Hudgene*, 98-1430; *President v. Kaylo*, 02-2525; *President v. Mitchell*, 03-1391; *President v. J.Levy Dabadie Correctional Center*, 04-1950; and *President v. O'Neal*, 99-2317.

[2]The case was dismissed and affirmed on appeal to the United States Fifth Circuit Court of Appeal. (Doc. #52.) The United States Supreme Court denied writs. (Doc. #53.)

2

|                    | duty was imposed. (Exhibit A, p.5.) |
|---|---|
| March 15, 2001 - | President appealed the conviction by the disciplinary board. (Exhibit A, p. 6-7.) |
| April 9, 2001 - | President's appeal was granted in part, dismissing the "theft" violation and replacing it with a "contraband" violation. (Exhibit A, p.9.) The sentence remained the same. |
| April 13, 2001 - | President filed suit in this Court, *President v. Stalder*, 01-0655. (Exhibit A, p. 12-21.) |
| May 14, 2001 - | Gaynard issued a disciplinary report alleging President's violation of Rule Number 3, "Defiance". (Exhibit A, p. 23.) President was found in violation after a hearing, and received one month "loss of good time" and a job change from computer class to the field. For violation of Rule Number 30, "General Prohibited Behaviors." President received eight days extra duty. (Exhibit A, p. 23, 28.) |
| May 18, 2001 - | President appealed the action of the disciplinary board. (Exhibit A, p. 29-33.) |
| June 5 & 8, 2001 - | Kaylo denied President's appeals. (Exhibit A, p. 34-35.) |
| June 14, 2001 - | President appealed Kaylo's denials to the |

3

|                      |                                                                                                                                                                                                 |
|----------------------|-------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                      | Secretary of the DOC. (Exhibit A, p. 36.) The Secretary denied the appeals on January 22, 2002. (Exhibit A, p.49.)                                                                              |
| August 6, 2001 -     | The Secretary of DOC denied President's complaint regarding cigarette smoke. (Exhibit A, p. 40.)                                                                                                |
| September 29, 2001-  | Tigner issued a disciplinary report regarding a violation of rule number 4 and ordering that canteen items in President's possession be confiscated. (Exhibit A, p.42.) The violation was dismissed. (Exhibit A, p.45.) |
| October 2, 2001 -    | President filed another ARP, alleging retaliation and harassment with regard to the disciplinary charges. (Exhibit A, p. 43-44.)                                                                |
| October 4, 2001 -    | President's ARP was denied. (Exhibit A, p.47.)                                                                                                                                                  |
| December 14, 2001 -  | The above captioned matter was filed in this Court. (01-2613, Doc. #1.)                                                                                                                         |
| September 21, 2002-  | Prison officials confiscated cassette tapes from the library, some of which belonged to President, during a "shakedown" of the library. (Exhibit A, p.62-64, 68.)                               |
| October 8, 2002 -    | President requested in writing that his tapes be returned. Barbin noted "These items have                                                                                                       |

|                      | been destroyed already." (Exhibit A, p.65.)                                                                   |
| -------------------- | ------------------------------------------------------------------------------------------------------------- |
| October 11, 2002 -   | President filed a Lost Personal Property Claim seeking the return of the tapes. (Exhibit A, p.66.)            |
| October 15, 2002 -   | President's Lost Property Claim was denied. (Exhibit A, p.67-68.)                                             |
| October 18, 2002 -   | President filed another ARP to recover the confiscated tapes. (Exhibit A, p.69-70.)                           |
| October 29, 2002 -   | The ARP was denied. (Exhibit A, p.71.)                                                                        |
| June 24, 2003 -      | President's cigarette smoke claim in federal court was dismissed. (01-0655, Doc. #46.)                        |

## II. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. In making its determination, the court must draw all justifiable inferences in favor of the nonmoving party. Once the moving party has initially shown "that there is an absence of

5

evidence to support the non-moving party's case," <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986), the non-movant must come forward with specific facts showing a genuine issue of fact for trial. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

III. <u>Law and Analysis</u>

    A. Due Process Claims / Disciplinary Violations

Based on the forgoing facts, President claims he received disciplinary violations resulting in a loss of privileges. (Doc. #54.) As the undersigned previously stated (Doc. #20), to the extent that President claims that he received punishment without due process, those claims are not cognizable under §1983.

In <u>Sandin v. Conner</u>, 515 U.S. 472 (1995), the Supreme Court held that the Due Process Clause of the Fourteenth Amendment does not afford an inmate a protected liberty interest that would entitle the inmate to procedural protections in the disciplinary process when the maximum sanction the inmate could receive does not "present the type of a typical, significant deprivation in which a state may conceivably create a liberty interest" and the duration of the prisoner's original sentence is not affected. <u>Id.</u> The Court noted that the protections of Fourteenth Amendment due process defined in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974), i.e. notice, hearing, impartial hearing officer, etc., do not apply to disciplinary sentences that do not present "a dramatic departure

from the conditions of the [prisoner's] sentence." In sum, the Court held that a prisoner's liberty interest is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. at 484.

Under the guidance provided by Sandin, the Fifth Circuit has held that, as a general rule, only sanctions which result in a loss of good time credit or which otherwise directly and adversely affect release will implicate a constitutionally protected liberty interest. See Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995). Liberty interests that are protected by the Due Process Clause are generally limited to actions that affect the quantity of time served by a prisoner. See Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997)(citations omitted). The Due Process Clause does not protect every change in the conditions of confinement that has a substantial adverse effect upon a prisoner. See Sandin, 515 U.S. at 478.

President has not alleged that the disciplinary action affected the duration of his sentence or that the sentence was atypical of the prison environment. President's complaint involves changes in the conditions of his confinement that are far from "extraordinary." Under Sandin, Orellana, and Madison, President's

loss of privileges and *de minimis* loss of "good time" do not constitute the type of atypical punishment that present a significant deprivation that would implicate due process concerns. Furthermore, under the facts alleged by President, it is clear that he was afforded procedural due process throughout his disciplinary hearing proceedings and appeals. His disagreement with the outcome of those proceedings is insufficient to implicate a violation of due process. Therefore, President has failed to show that he is entitled to judgment as a matter of law on this issue. In fact, there is no genuine issue of material fact for trial regarding whether President's due process rights were violated. The undersigned finds that they were not.

B. Retaliation Claims

President alleges that the disciplinary reports, adjudications, sentences imposed, and denial of appeals establish a pattern of harassment by prison officials who sought to retaliate against him after he asserted his right to be free from the effects of second hand tobacco smoke. President also claimed that the failure of the administration to grant his requests for job reclassification amounted to harassment and retaliation, as did searches of his person and property and confiscation of canteen items. He also claims that the destruction of audio tapes amounts to ongoing harassment and retaliation.

To state a valid claim for retaliation under section 1983, a

prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation. See Jones v. Greninger, 188 F.3d 322, 324-325 (5th Cir. 1999), *citing* McDonald v. Steward, 132 F.3d 225, 231 (5th Cir.1998). The inmate must allege more than his personal belief that he is the victim of retaliation. See id., *citing* Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir.) *cert. denied*, 522 U.S. 995 (1997). The inmate must establish that "but for the retaliatory motive the complained of incident--such as the filing of disciplinary reports as in the case at bar--would not have occurred." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). This places a significant burden on the inmate, and mere conclusionary allegations of retaliation will not withstand a summary judgment challenge. See id., *citations omitted*. The inmate must produce direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. Further, if the inmate is unable to point to a specific constitutional right that has been violated, the claim will fail. See Tighe v. Wall, 100 F.3d 41, 43 (5th Cir.1996).

Although it is true that prison officials may not retaliate against or harass an inmate by denying him due process, President is unable to demonstrate that the actions of the defendants have run afoul of this constitutional right. Furthermore, as noted

above, President does not have a federally protected liberty interest in having his grievances resolved to his satisfaction.

In the instant matter, Defendants argue that there are genuine issue of material fact for trial as to whether the disciplinary action on May 14, 2001 (defiance charge), was retaliatory, whether the confiscation of cassette tapes was retaliatory, and whether President was subjected to excessive searches, which were retaliatory. (Doc. #59, page 1.) The seizure of cassette tapes was in the course of and pursuant to a "shakedown" of the library. (Plaintiff's Exhibit A, p. 68.) President was improperly storing his cassette tapes in the library at that time. (Plaintiff's Exhibit A, p. 72.) As to the disciplinary charges, President was found "guilty" after hearings. Further, President has not established that any searches conducted were with the intent of harassing or retaliating against him. The undersigned finds that these are not genuine issues for trial because President has not shown that, but for the retaliatory motive, these incidents would not have occurred.

While the defendants neglected to file a motion for summary judgment, a district court may grant summary judgment *sua sponte* "so long as the losing party was on notice that she had to come forward with all of her evidence." General Universal Systems, Inc. v. Lee, 379 F.3d 131, 145 (5th Cir. 2004), *citing* Celotex v. Catrett, 477 U.S. 317, 326 (1986) ("[D]istrict courts are widely

acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence."); Judwin Properties, Inc. v. United States Fire Ins. Co., 973 F.2d 432, 436-37 (5th Cir.1992); see also Charles Alan Wright, Arthur R. Miller , & Mary Kay Kane, 10A Federal Practice and Procedure § 2720 (1998). In this case, the Court repeatedly sent notices regarding filing motions for summary judgment and relevant evidence in support thereof. (Doc. #s 27, 49, 58.) Therefore, President was on notice that he had to come forward with all of his evidence, and he did, in fact, come forward with that evidence, submitting 80 pages of supporting documentation with his motion. Although the defendants neglected to request summary judgment, the undersigned finds that, based on the forgoing discussion, it is nonetheless proper at this time.

## IV. Conclusion

Based on the forgoing discussion, the undersigned finds that there are no genuine issues of material fact for trial, and that Defendants are entitled to judgment as a matter of law. Therefore, it is recommended that President's Motion for Summary Judgment (Doc. #54) be DENIED, that summary judgment be GRANTED in favor of the defendants, and that President's claims be DISMISSED.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 24th day of August, 2005.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE