# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# ALEXANDRIA DIVISION

**RODERICK PRESIDENT**

**CIVIL ACTION NO. 01–2613**

**-vs-**

**JUDGE LITTLE**

**BYRON KAYLO, ET AL.**

## JUDGMENT

Before the court is a report and recommendation of the magistrate suggesting that the motion for summary judgment filed by *pro se* plaintiff Roderick President ("President"), pursuant to 42 U.S.C. § 1983, *in forma pauperis*, be denied and that summary judgment be granted in favor of the defendants, all of whom are employees of the Avoyelles Correctional Center. President timely filed an objection to the magistrate's report on 15 September 2005.[1] After full record review, this court accepts the findings and recommendations of the magistrate as correct but wishes to clarify its reasoning.

**I.**     **Due Process Claims**

The protections afforded by the Due Process Clause do not extend to "every change in the conditions of confinement" that adversely affects prisoners. Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997). The loss of good time credits as a result of prison disciplinary proceedings may,

---

[1] This court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations by the magistrate. See 28 U.S.C. § 636(b)(1); LR 74.1W(B); United States v. Wilson, 864 F.2d 1219, 1221 (5th Cir. 1989). The district court is not, however, required to reiterate the findings and conclusions of the magistrate if found to be correct. See Warren v. Miles, 230 F.3d 688, 694-95 (5th Cir. 2000); Koetting v. Thompson, 995 F.2d 37, 40 (5th Cir. 1993).

however, implicate protected liberty concerns and may entitle an inmate to the procedural safeguards set forth in Wolff v. McDonnell, 418 U.S. 539, 556, 564-66 (1974). See Sandin v. Conner, 515 U.S. 472, 484 (1995); Hudson v. Johnson, 242 F.3d 534, 536 (5th Cir. 2001); Murphy v. Collins, 26 F.3d 541, 543 & n.5 (5th Cir. 1994).[2]

President essentially contends that the effect of his loss of honor dorm status has been to reduce his opportunity to earn good time credits that could lead to a shortened time in prison. In Sandin, the Court rejected a similar argument, noting that Conner's confinement in disciplinary segregation would not "inevitably" affect the duration of his sentence since the decision to release a prisoner on parole "rests on a myriad of considerations." 515 U.S. at 487. Indeed, the Court concluded that the possibility that Conner's confinement in disciplinary segregation would affect when he was ultimately released from prison "is simply too attenuated to invoke the procedural guarantees of the Due Process Clause." Id.

The loss of the opportunity to earn good time credits that might lead to earlier parole is a collateral consequence of President's custodial status. These sort of speculative, collateral consequences of prison administrative decisions do not create constitutionally protected liberty interests. See Meachum v. Fano, 427 U.S. 215, 229 n.8 (1976) (noting that possible effect on parole decision does not create liberty interest in confinement in particular prison); Malchi v. Thaler, 211 F.3d 953, 958-59 (5th Cir. 2000) (finding no constitutionally cognizable claim to "right" to particular time-earning status). Any of a host of administrative or disciplinary decisions made by

---

[2] Although the loss of good time credits may give rise to a protected constitutional liberty interest, see Madison v. Parker, 104 F.3d 765, 768-69 (5th Cir. 1997), a prisoner cannot recover good time credits by way of a 42 U.S.C. § 1983 action. Clarke v. Stalder, 154 F.3d 186, 189 (5th Cir. 1998) (*en banc*). Such relief must be sought through a *habeas corpus* action. See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Clarke, 154 F.3d at 189.

prison authorities might somehow affect the timing of a prisoner's release, but such effects have never been held to confer a constitutionally protected liberty interest upon a prisoner such that the prison authorities must comply with the constitutional requirements of due process. For example, in Bulger v. U.S. Bureau of Prisons, 65 F.3d 48, 50 (5th Cir. 1995), the Fifth Circuit held that the loss of a prison job did not implicate the prisoner's liberty interest even though the prisoner lost the ability to accrue good time credits automatically as a consequence.

Finally, even if President possessed a constitutionally protected liberty interest in his custodial status, this court is not persuaded that President has been afforded constitutionally insufficient process. President points to no denial of procedure with respect to any of his claims.

Thus, President is not entitled to summary judgment because the disciplinary proceedings against him did not implicate Due Process concerns and his complaint did not raise cognizable claims of retaliation. See Sandin, 515 U.S. at 474, 485; Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997). Furthermore, President has not shown how the actions taken against him presented an atypical or significant hardship beyond the ordinary incidents of prison life that would give rise to a constitutionally protected liberty interest and trigger Due Process guarantees. See Sandin, 515 U.S. at 484; Wilkerson v. Stalder, 329 F.3d 431, 436 (5th Cir. 2003).

## II.  Retaliation Claims

President faces a heavy burden with respect to his retaliation claims. "The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." Woods

3

v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995) (quoting Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994)). Trial courts must carefully examine such claims "to assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them." Id. President's allegations that the disciplinary proceedings were instigated for retaliatory purposes are conclusory and do not set forth a chronology establishing retaliatory motivations. See Richardson v. McDonnell, 841 F.2d 120, 123 (5th Cir. 1988) (upholding summary judgment dismissal of retaliation claim where inmate never offered documentary or testimonial evidence in support of assertions); Smith, 60 F.3d at 1166.[3]

The disciplinary charges against President resulted in his loss of good time credits, housing in the honor dorm, and the ability to attend computer classes. President contends that these charges were filed in retaliation for a grievance he filed with respect to second hand smoke. The change in his housing and job status does not implicate due process concerns. See Parker, 104 F.3d at 768. However, the right to good time credit is protected by the Due Process Clause and may not be arbitrarily abrogated. Wolff, 418 U.S. at 554-57. Insofar as the procedures used to revoke good time credits are concerned, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." Id. at 564-65 (quoting Morrissey v. Brewer, 408 U.S. 471, 489 (1972)). The disciplinary reports in this matter complied with Wolff's requirement by providing the basis for the finding of guilt.

President has failed to show that but for his grievance and subsequent lawsuit regarding

---

[3] In Smith, although declining to hold as a matter of law that a legitimate prison disciplinary report was an absolute bar to a retaliation claim, the Fifth Circuit held that the existence of such a report, properly viewed, was probative and potent summary judgment evidence, as would be evidence of the number, nature, and disposition of prior retaliation complaints by the inmate. 60 F.3d at 1166.

4

second hand smoke, he would not have been subject to disciplinary proceedings. See <u>Johnson v. Rodriguez</u>, 110 F.3d 299, 310 (5th Cir. 1997). Rather, President has shown nothing more than his "personal belief that he [was] the victim of retaliation." <u>Id.</u> (internal quotation marks and citation omitted). As such, Rule 56's requirement that there be "no genuine issue as to any material fact" has been met in this case. FED. R. CIV. P. 56(c). The facts in this case necessitate judgment for the defendants.

Therefore, Plaintiff's motion for summary judgment is DENIED and summary judgment is GRANTED in favor of the defendants. Plaintiff's claims are DISMISSED WITH PREJUDICE.

Alexandria, Louisiana

27 October 2005

_____
F. A. LITTLE, JR.
UNITED STATES DISTRICT JUDGE